**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**FILED
April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,
Plaintiff Below, Respondent**

**vs.) No. 19-1103** (Berkeley County 12-F-161)

**Joseph L. Stephens, Sr.,
Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Joseph L. Stephens, Sr., by counsel Robert C. Stone, Jr., appeals the November 4, 2019, order of the Circuit Court of Berkeley County revoking petitioner's supervised release and imposing a term of forty years of incarceration followed by an additional term of supervised release of ten years. Respondent State of West Virginia, by counsel Lara K. Bisset, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2013, petitioner and the State entered into a plea agreement in Berkeley County Case Nos. 11-F-183 and 12-F-161. Pursuant to that agreement, petitioner agreed to be charged by an information with unlawful assault in Case No. 11-F-183 and with first-degree sexual abuse and assault during the commission of a felony in Case No. 12-F-161. In exchange, the State agreed not to file a recidivist information against petitioner.[1] At an April 2, 2013, plea hearing, petitioner

---

[1]Petitioner had at least two prior felony convictions.

entered *Alford/Kennedy* pleas to the counts set forth in the information.[2]

During the plea hearing, the State provided proffers to support the entry of petitioner's pleas. In Case No. 11-F-183, the State proffered that there was sufficient evidence of unlawful assault because petitioner struck his then-girlfriend and pulled out clumps of her hair, leaving red marks on her skullcap. In Case No. 12-F-161, the State proffered that there was sufficient evidence of first-degree sexual abuse when a woman was awakened in the middle of the night with petitioner on top of her and his penis inside her vagina. The State further proffered that there was sufficient evidence of assault during the commission of a felony because an examination showed that the victim in Case No. 12-F-161 experienced bleeding and a two-centimeter abrasion in her vaginal area. While not admitting guilt, petitioner agreed that the State had sufficient evidence of the crimes alleged in the information. Thereafter, the circuit court imposed the following consecutive sentences of incarceration upon petitioner: one to five years for unlawful assault, one to five years for first-degree sexual abuse, and two to ten years for assault during the commission of a felony. The circuit court ordered petitioner to register for life as a sex offender and to serve a term of forty years of supervised release following his terms of incarceration.

Petitioner signed the terms and conditions of supervised release on April 2, 2013. Relevant here, petitioner was forbidden to "violate any law of this state, any other state, any municipality, or of the United States" and to "use, consume, or have in his . . . possession any beverages containing alcohol." Petitioner obtained release on parole on June 20, 2016, and discharged his parole on June 30, 2017, at which time petitioner began his supervised release. On June 29, 2018, the State filed a petition to revoke petitioner's supervised release, alleging that petitioner (1) committed a domestic battery in February of 2018 in violation of West Virginia Code § 61-2-28(a); (2) had been indicted in Berkeley County Case No. 18-F-149 on two counts of second-degree sexual assault, four counts of battery, one count of strangulation, and one count of attempting to disarm a law enforcement officer based on a separate incident occurring on February 28, 2018; and (3) admitted to his probation officer that, at the time of the February 28, 2018, incident, he had been consuming alcohol.

Prior to the November 1, 2019, revocation hearing, the State dismissed the domestic battery charge. Petitioner did not dispute his probation officer's testimony that he admitted to the consumption of alcohol. Accordingly, the State introduced testimony and evidence to show that petitioner "violate[d] . . . [the] law[s] of this state" by sexually attacking a woman near railroad tracks in Martinsburg, West Virginia, on February 28, 2018. The State presented the testimony of both petitioner's probation officer and the police officer who responded to the scene on February 28, 2018. To the extent that the police officer relayed to the circuit court statements of other people, petitioner objected that the police officer's testimony constituted hearsay. The circuit court

---

[2]Relying on *North Carolina v. Alford*, 400 U.S. 25 (1970), this Court held in Syllabus Point 1 of *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987), that "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."

2

overruled the objection, stating that it would not consider the statements for the truth asserted in them, but only as components of the police investigation.[3]

The police officer testified that the victim was visibly upset and had cuts and scratches on her face. The police officer further testified that, during an interview, the victim stated that petitioner told her that, if he was going to be reincarcerated, "I'm taking your pussy with me." During the police officer's testimony, the State introduced a video recording taken on a cell phone by a witness who interrupted the attack. The video recording was played during the hearing and showed a man on top of a woman beside railroad tracks. Each person's pants were down. The video recording further shows the woman yelling "Stop it!" and "[W]hy are you doing this to me?" The witness is heard yelling at the man who looks over his shoulder, gets off the woman, and pulls his pants up. When the man stands up, while pulling up his pants, it is obvious that he has an erection. The woman also quickly pulls up her pants and thanks the witness for interrupting the attack. The witness is again heard yelling at the man who is now walking away, across the railroad tracks with a bottle of alcohol in each hand. The witness is heard asking the woman who the man is; she responds that the man is "Joey Stephens."

During cross-examination, petitioner asked the police officer if there was DNA evidence that linked petitioner to the victim, and the officer responded in the affirmative. During redirect examination, the State introduced DNA test results that showed that "penis shaft" swabs taken from petitioner "indicate a mixture of DNA from two individuals" and that "the deduced foreign profile is consistent with the DNA profile of [the victim]." After the State's presentation, petitioner declined to testify. Thereafter, the State argued that petitioner's supervised release be revoked and that the circuit court impose incarceration for the full forty-year term of his supervised release followed by an additional term of supervised release of ten years. Petitioner countered that incarceration for the full term of his supervised release was unduly harsh given that, in Case No. 18-F-149, he was yet to face trial on the charges based on the February 28, 2018, incident.

The circuit court noted the seriousness of the State's request to incarcerate petitioner for the full term of his supervised release, but found the testimony of petitioner's probation officer and the police officer who responded to the scene on February 28, 2018, to be credible. The circuit court further found that the victim told the police officer that petitioner stated that, if petitioner

---

[3]On appeal, petitioner notes his disagreement with the circuit court's ruling as to his hearsay objection; however, petitioner fails to assign error to the ruling. Rule 10(c)(7) of the Rules of Appellate Procedure provides, in pertinent part, that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal," and that "[t]he Court may disregard errors that are not adequately supported by specific references to the record on appeal." "Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996), *State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (finding that cursory treatment of an issue is insufficient to raise it on appeal).

was going to be reincarcerated,

> [petitioner] was going to take parts of the victim with him. Also, the [c]ourt relies upon the exhibits that were admitted here today. In particular[,] the exhibit that showed that there was in fact without any question to this [c]ourt by clear and convincing evidence that sexual contact was made between [petitioner] and the victim and the DNA corroborated that. The [c]ourt saw the concern of the victim in the video [recording] and does believe that she was the victim of a criminal act and was responding as one would respond if they had been attacked against their will.

Accordingly, the circuit court concluded that the State showed, by clear and convincing evidence, that petitioner violated the terms and conditions of his supervised release. Therefore, by order entered on November 4, 2019, the circuit court revoked petitioner's supervised release and imposed a forty-year term of incarceration followed by an additional term of supervised release of ten years.[4]

Petitioner now appeals the circuit court's November 4, 2019, sentencing order. This Court "reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). We have further held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). West Virginia Code § 62-12-26(h)(3) provides that the circuit court may

> [r]evoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release if the court . . . finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release.

On appeal, petitioner first argues that the circuit court's imposition of incarceration for the full forty-year term of his supervised release violates his right to a jury trial and the double jeopardy clause.[5] The State counters that petitioner's argument is without merit. We agree with the State.

---

[4] The imposition of an additional term of supervised release following petitioner's incarceration for the full forty-year term of his supervised release is authorized by West Virginia Code § 62-12-26(j).

[5] The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[t]he accused shall enjoy the right to a . . . public trial, by an impartial jury[.]" Article III, Section 14 of the West Virginia Constitution provides, in pertinent part, that "[t]rials of crimes, and of misdemeanors, unless herein otherwise provided, shall be by a jury[.]" The double jeopardy clause

In *State v. Hargus*, 232 W.Va. 735, 753 S.E.2d 893 (2013), we rejected the same argument petitioner raises here, that the revocation of a defendant's supervised release "require[s] that a jury find the defendant guilty of the violation beyond a reasonable doubt which is required for a finding of guilt in a criminal trial." *Id.* at 741, 753 S.E.2d at 889 (Footnote omitted.). Petitioner argues that *Hargus* is distinguishable from the instant case because, in petitioner's case, the circuit court found that petitioner violated the terms and conditions of his supervised release by committing criminal conduct for which he is under indictment in a separate criminal action. We disagree. In *Hargus*, we found that a revocation proceeding pursuant to West Virginia Code § 62-12-26(h)(3) was "a continuation of the prosecution of the original offense and not a new prosecution of additional offenses." *Id.* at 742, 753 S.E.2d at 900. Here, a term of supervised release was imposed upon petitioner as a part of his sentence in Case Nos. 11-F-183 and 12-F-161 based on his convictions for unlawful assault, first-degree sexual abuse, and assault during the commission of a felony. That petitioner's violation of that supervised release consisted of new criminal activity is not relevant. As we reasoned in *Hargus*, "[b]ecause a revocation hearing under W.Va. Code § 62-1-26[(h)] is not a separate criminal prosecution, it does not require a finding of guilt by a jury beyond a reasonable doubt." *Id.*[6] Therefore, we conclude that the circuit court's revocation of petitioner's supervised release, due to the court's finding of petitioner's violation of its terms and conditions, and imposition of a term of incarceration did not violate his right to a jury trial.[7]

For similar reasons, we reject petitioner's claim that the double jeopardy clause was violated by the circuit court's imposition of incarceration for the full forty-year term of his supervised release. As we have found,

> a post-revocation sanction simply is a continuation of the legal consequences of a defendant's original crime[s]. In other words, it is part of a single sentencing scheme arising from the defendant's original conviction[s]. . . . Accordingly, this

of the United States Constitution is set forth in the Fifth Amendment and provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The double jeopardy clause of the West Virginia Constitution is set forth in Article III, Section 5 and provides that no person shall "be twice put in jeopardy of life or liberty for the same offence."

[6]At the time of our decision in *State v. Hargus*, 232 W.Va. 735, 753 S.E.2d 893 (2013), the revocation provision of the supervised released statute, West Virginia Code § 62-1-26, was set forth in subdivision (g) instead of subdivision (h). The substance of the provision is the same.

[7]Petitioner argues that the United States Supreme Court reached the opposite conclusion in *United States v. Haymond*, 139 S. Ct. 2369 (2019) (plurality opinion), with regard to Title 18, Section 3583(k) of the United States Code, which is a provision of the federal supervised release statute. In *State v. Edward B.*, No. 19-1026, 2020 WL 7231608 (W. Va. December 7, 2020) (memorandum decision), we found that the decision in *Haymond* was expressly limited to the constitutionality of Title 18, Section 3583(k). *Id.* at *4 (citing *Haymond*, 139 S.Ct. at 2383). We further found that Title 18, Section 3583(k) and West Virginia Code § 62-1-26 were not similar to each other. *Id.*

5

Court now holds that West Virginia Code § 62-12-26[(h)](3) (2011), which provides for additional sanctions, including incarceration, upon revocation of a criminal defendant's period of supervised release, does not violate the prohibition against double jeopardy found in the Fifth Amendment of the United States Constitution and Article III, § 5 of the Constitution of West Virginia.

*Hargus*, 232 W. Va. at 743, 753 S.E.2d at 901.

Petitioner further argues that the circuit court's imposition of a forty-year term of incarceration is unconstitutionally disproportionate because he is not yet convicted of any of the criminal conduct alleged by the State to show that he violated the terms and conditions of his supervised release. We note that, pursuant to West Virginia Code § 62-12-26(h)(3), the circuit court found, by clear and convincing evidence, that petitioner committed a criminal act on February 28, 2018, based on the video recording of the incident and corroborating DNA evidence. Furthermore, West Virginia Code § 62-12-26(h)(3) permitted the circuit court to "require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release[.]" Accordingly, we find that, in imposing a forty-year term of incarceration, the circuit court acted within the limits set forth in West Virginia Code § 62-12-26(h)(3).

As noted by the State, in Syllabus Points 3 and 4 of *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981), we held:

"Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syllabus Point 8, *State v. Vance*, [164] W.Va. [216], 262 S.E.2d 423 (1980).

While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence.

Here, the circuit court did not impose a life recidivist sentence and, by not requiring petitioner to serve more than the period of his supervised release, did not impose a term of incarceration beyond the maximum set by West Virginia Code § 62-12-26(h)(3). Therefore, pursuant to Syllabus Point 4 of *Wanstreet*, we decline to conduct a constitutional proportionality analysis of the circuit court's imposition of a forty-year term of incarceration due to petitioner's violation of the terms and conditions of his supervised release. *See also* Syl. Pt. 4, *Goodnight*, 169 W. Va. at 366, 287 S.E.2d 505 (holding, in pertinent part, that "[s]entences imposed by the trial court, if within statutory limits . . ., are not subject to appellate review"). Accordingly, we find no error in the circuit court's November 4, 2019, sentencing order.

For the foregoing reasons, we affirm the circuit court's November 4, 2019, sentencing order.

Affirmed.

**ISSUED:** April 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton